UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LIGANG FANG,<br><br>    Plaintiff,<br><br>v.<br><br>YAFEI LIU,<br><br>    Defendant. | Case No. 22-cv-00941-VC (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br>Re: Dkt. No. 23 |

Now pending before the court is a jointly-filed discovery dispute letter brief (dkt. 23) through which Plaintiff seeks to compel the production of certain discovery. The court finds that the issues have been adequately briefed such that, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the matter is suitable for disposition without oral argument. For the reasons stated below, Plaintiff's request to compel the documents and information at issue is denied.

## **BACKGROUND**

This is an action for the recovery of allegedly stolen money delineated under the following legal theories: intentional misrepresentation, concealment, false promise, fraudulent inducement, conversion, breach of contract, and common count – money had and received. *See generally* Compl. (dkt. 1) at 4-12. Plaintiff is a Chinese national currently residing in Beijing, while Defendant (also a Chinese national) currently resides in Hillsborough, California. *Id*. at 2. At the outset, it is important to note that while the Complaint is shy on details, as far as dates and time periods are concerned (*see id*. at 2-4), two operative dates are mentioned: (1) Plaintiff and Defendant met at a golf tournament in 2011; and, (2) in May of 2021, Plaintiff was informed by

Chinese authorities that he would be fined for tax evasion pursuant to a years-long investigation into his affairs. *Id*. When Plaintiff and Defendant first met at that golf tournament in 2011, they "developed a professional relationship and remained in contact, mostly to discuss business topics of mutual interest and potential synergies between their companies." *Id*. at 2. At some unspecified time after the date of that golf tournament in 2011, Plaintiff was informed by Chinese tax authorities that he was being investigated for tax evasion. *Id*. at 3. At another unspecified point in time thereafter, Plaintiff sought to meet Defendant in person to discuss the matter and, during that meeting, "Defendant confided [that] he had faced similar legal issues and said he could help Plaintiff navigate the process." *Id*. Defendant then reportedly offered to assist Plaintiff in dealing with the tax investigation through advocacy and other means in exchange for 4,500,000.00 RMB – Plaintiff reportedly paid the full amount a few days after that meeting. *Id*.[1] Approximately one year later (from that unspecified point in time), Defendant reportedly informed Plaintiff that he had exhausted the retainer, "but had made significant progress toward resolving the matter and expected Plaintiff would only receive a fine." *Id*. A few months later, Defendant reportedly told Plaintiff that authorities had decided to penalize Plaintiff in the amount of 1,000,000.00 RMB, while telling Plaintiff that he would pay the penalty on his behalf if Plaintiff were to transmit that sum to Defendant via wire transfer – Plaintiff wired the funds as instructed. *Id*. Thereafter, eight months later, Defendant reportedly asked Plaintiff to wire another 1,000,000.00 RMB, claiming that the tax authorities had increased the penalty by that amount – "[e]ager to conclude the matter, Plaintiff wired the money as instructed." *Id*.[2]

---

[1] While this detail is not mentioned in the Complaint, Plaintiff's portion of the letter brief states that this sum (approximately $654,850.00 at current exchange rates) was delivered to Defendant "in cash at an in-person meeting in China." *See* Ltr. Br. (dkt. 23) at 3.

[2] While the Complaint states that the two subsequent payments (each of which were in the amount of 1,000,000.00 RMB) were transmitted by wire, Plaintiff's portion of the letter brief contradicts that assertion and claims that the second 1,000,000.00 RMB payment was delivered in cash to Hongjun Zhang, one of Defendant's associates. *Compare* Compl. (dkt. 1) at 3, ¶¶ 11, 12 ("Plaintiff wired the [the first 1,000,000.00 RMB] a few days later . . . Plaintiff [then] wired the [second 1,000,000.00 RMB] as instructed."), *with* Ltr. Br. (dkt. 23) at 3 ("Thereafter, Defendant asked Plaintiff for another 1 million RMB in cash and told him Zhang would meet him to retrieve the cash. After Plaintiff gave Zhang the cash, Defendant called to confirm receipt of the 1 million RMB."). For the purposes of resolving the present discovery dispute, while this inconsistency is not entirely immaterial, it is also not determinative.

United States District Court
Northern District of California

Then, in May of 2021, when Plaintiff was informed by Chinese tax authorities that their investigation had finally concluded and that they had decided to penalize him with a fine, Plaintiff spoke with an unnamed acquaintance that had reportedly worked closely with Defendant and who stated that Defendant had swindled Plaintiff and that Defendant had also reportedly swindled others in the same manner. *Id*. at 3-4. Therefore, the essence of this litigation is such: Plaintiff was informed that he was under investigation for tax evasion; he contacted Defendant (a golfing acquaintance) to discuss the matter; Defendant claimed that he had previously "faced similar legal issues and said he could help Plaintiff navigate the process" (Compl. (dkt. 1) at 3); Plaintiff then reportedly gave Defendant 4,500,000.00 RMB in cash, and another 2,000,000.00 RMB through either wire transfers and/or in cash; then, "more than five years later" (from those unspecified dates), in May of 2021, Plaintiff was informed by tax authorities that their investigation had concluded and that they intended to penalize him with a fine (*id*.); this caused Plaintiff to speak with a mutual acquaintance who reportedly informed him that Defendant had defrauded Plaintiff, and others, in the manner herein described.

## **DISCUSSION**

At the outset, the court will note that Plaintiff's Complaint and his discovery requests have been sloppily drafted in two important respects – the combination of which require the denial of his motion to compel. First, as discussed below, the Complaint lacks specific dates as to when Plaintiff allegedly handed over the sums in question which renders Plaintiff's sweeping document requests overly broad and disproportionate to the needs of the case. Second, some of Plaintiff's discovery requests are completely divorced from any of the allegations pleaded in the Complaint, which renders those requests irrelevant to any fact of consequence involved in the case.

On example of the latter flaw appears in RFP No. 9. In pursuance of that request, Plaintiff seeks to compel the production of documents sufficient to identify Defendant's roles in the Chinese Communist Party since 2011 because of the notion that "Defendant's roles in the Communist Party speak to whether Defendant had the connections and contacts within the Communist Party that he claimed he had and, relatedly, whether he had the power and ability to advocate on Plaintiff's behalf, as he led Plaintiff to believe he would." *See* Ltr. Br. (Dkt. 23) at 2.

3

However, the Complaint does not venture to allege that Defendant's supposed party membership was used as an inducement to separate Plaintiff from his money – instead, the Complaint simply alleges that Defendant had previously "faced similar legal issues and said he could help Plaintiff navigate the process" (Compl. (dkt. 1) at 3). Accordingly, Plaintiff's suggestion that Defendant's connection to the Chinese government, or its ruling party, could speak to whether he had "the power and ability to advocate on Plaintiff's behalf," as mentioned in the Letter Brief, is based on a logical chain with a missing link. To wit – in order to establish the relevance of Defendant's supposed connections to the Chinese government, one must necessarily assume that only those persons connected to the Chinese government through party membership can advocate on behalf of a person being investigated for tax evasion. Additionally, this gap in logical reasoning is further exacerbated by the contradictory allegation in the Complaint to the effect that it was not Defendant's supposed government connections, but his having previously weathered "similar legal issues" that Plaintiff has alleged as constituting the inducement or catalyst that caused Plaintiff to hand over the sums of money at issue to Defendant. Federal Rule of Evidence 401 defines "relevant evidence" as that which would have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. However, liberal as the relevancy standard may appear, the standard is not so liberal as to allow a party to explore a matter which does not presently appear germane simply because of an argument (as is advanced here by Plaintiff) that it might conceivably later become germane. *See Food Lion v. United Food & Comm'l Workers Union*, 103 F.3d 1007, 1012-1013 (D.C. Cir. 1997). Accordingly, because there is no logical or legal relevance between Defendant's political affiliation in China and any fact of consequence in this case (as pleaded in the Complaint), Plaintiff's request to compel the information sought by RFP No. 9 is **DENIED**.

The other problem with Plaintiff's remaining discovery requests that are the subject of the instant request to compel is that they are wildly broad in their sweep (and therefore not narrowly tailored), contrary to the requirements of Fed. R. Civ. P. 26(b)(1). *See e.g.*, *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 U.S. Dist. LEXIS 5616, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (holding that "a party seeking discovery of relevant, non-privileged information must show, before

4

anything else, that the discovery sought is proportional to the needs of the case."). Plaintiff seeks documents sufficient to identify: all bank accounts in Defendant's name (RFP No 10); all investment accounts in Defendant's name (RFP No. 11); all real property of which Defendant is an owner to any degree (RFP No. 12); all assets held by any person for Defendant (RFP No. 13); and, all asserts that any person has agreed to hold for Defendant (RFP No. 14). *See* Ltr. Br. (dkt. 23) at 14-15. These requests all involve an overly broad sweep. Plaintiff contends that because Defendant denies ever receiving any money from Plaintiff, "[t]he purpose of these requests is to identify evidence that Defendant, in fact, received that money, either directly from Plaintiff or indirectly from third parties who may have held the money at Defendant's request, including the percipient witnesses Plaintiff identified in his initial disclosures." *Id*. at 2-3. Plaintiff responds to Defendant's proportionality argument by claiming that the RFPs are narrowly crafted because they only seek documents "sufficient" to identify certain categories of information, for example, "sufficient" to identify all real property Defendant owns, whether in whole or in part (RFP No. 12) – Plaintiff, therefore, contends that by using the phrase, "documents *sufficient* to identify," he has satisfied the proportionality requirement of Rule 26(b)(1). *See id*. at 3. In essence, Plaintiff contends that use of the word "sufficient" necessarily narrows the sweep of his RFPs to: "high-dollar transactions, transactions between Defendant and third-party witnesses whom Defendant asked to serve as intermediaries, how Defendant maintains his assets, and what assets he maintains." *Id*. The court will address these contentions *seriatim*: (1) not all high-dollar transactions are relevant to this case, some will be outside the temporal scope of this case, others will be of the wrong order of magnitude (either too big or too small) to be relevant to this case; (2) even all transactions between Defendant and those alleged intermediary third-parties may not be relevant depending on the extent of Defendant's business activities involving those same persons but which might be unrelated to the transactions identified in Plaintiff's complaint; and, (3) how Defendant maintains his assets and what assets he maintains is likely a substantially larger universe of information than would be of concern to Plaintiff based on the allegations in the Complaint at bar. Furthermore, the mere use of the word "sufficient" in RFPs that ask for the identification of – for example – all real property Defendant owns, or all assets held for him by

5

any person, or all banking or investment accounts owned by Defendant all necessarily constitute overly broad discovery requests that may very well capture more irrelevant information than relevant information. In short, these requests were heedlessly drafted in a manner that takes no care at all to capture only (or even mostly) relevant information. For that reason, the court finds that Plaintiff has failed to establish that RFP Nos. 10, 11, 12, 13, and 14 seek information "that is relevant to any party's claim or defense and proportional to the needs of the case . . ." *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Plaintiff's request to compel the material requested in RFP Nos. 10, 11, 12, 13, & 14 is **DENIED**.

In RFP Nos. 15 and 16, Plaintiff seeks documents "sufficient to show" all transactions where Defendant has either received or disbursed at least 500,000 RMB since January 1, 2014. *See* Ltr. Br. (dkt. 23) at 15. These requests are also overly broad and disproportional to the needs of the case because: (1) their temporal scope begins with a date that is not identified in the Complaint as having any significance; (2) the requests indiscriminately seek the discovery and disclosure of <u>all</u> of Defendant's transactions during an 8-year period of time for all sums greater than 500,000 RMB which appears to be arbitrarily selected; and, (3) as was the case with the above-mentioned RFPs, Plaintiff's requests are so broadly phrased as to likely capture far more irrelevant information than relevant information (given the fact, as alleged in the Complaint, that Defendant is an active businessman). Thus, Plaintiff's request to compel the information sought in RFPs 15 and 16 are **DENIED**.

In RPF Nos. 17, 18, 19, 20, and 21, Plaintiff seeks documents sufficient to show "all transactions," since January 1, 2014, between Defendant and Hongjun Zhang, Ru Huang, Li Sun, Baohong Chen, and Yiran Zhao. *See id*. at 15-16. For the reasons outlined above, the court finds that these requests are also framed far too broadly; that they are phrased to (potentially) capture far more irrelevant information than relevant information; that they are so phrased based on the (potentially) invalid assumption that all of Defendant's transactions with these individuals over the last eight years only involved Plaintiff's allegedly stolen money. Accordingly, these requests are overly broad and disproportionate to the needs of this case because of the large temporal scope involved (which is problematic in light of the fact that the Complaint is vague and silent about

6

*when* Plaintiff was induced to allegedly part with each of the three installments in which he allegedly tendered his money to Defendant or his associates) and also because of the lack of any limits at all as to the subject matter or nature of Defendant's transactions with these persons into the records of which Plaintiff wishes to intrude. Because Plaintiff's requests have been so carelessly drafted to include any and all transactions – relevant or otherwise – between Defendant and his named associates, Plaintiff's request to compel the information in RPF Nos. 17, 18, 19, 20, and 21 is **DENIED**.

Lastly, in RFP No. 23, Plaintiff seeks to compel the production of Defendant's "complete tax returns for tax years 2011 through 2019." *See id*. at 16. Plaintiff's only justification for seeking nine years of Defendant's tax returns is to determine "whether Defendant declared the funds he received from Plaintiff as income." *Id*. at 3. There are several problems with this request, any of which would justify denying the request to compel. First, the year 2011, as set forth in the Complaint, is only significant because that is when Plaintiff and Defendant met at a golf tournament. Beyond that, the Complaint is silent as to when Plaintiff received any allegedly false assurances from Defendant, or when he reportedly delivered the 4,500,000.00 RMB in cash to Defendant at the in-person meeting in China. Because the Complaint does not make it clear whether any of that that happened in 2011, 2012, 2013, 2014, or during some other year, the court cannot conclude that 2011 would be an intelligent starting point for divulging Defendant's tax returns. Second, it is equally unclear (from reading the Complaint) why 2019 would have any significance as an end-point for this range of dates related to these tax returns. Third, Plaintiff's explanation – to the effect that he wants to see whether his monies were ever declared as income by Defendant by looking at his individual tax returns – makes little sense. This is so because American federal individual income tax returns generally lump income together in several broad categories (e.g., income from wages, interest, dividends, IRA distributions, pensions, and Social Security benefits), and Plaintiff has not shown anything that would persuade the court that viewing any of Defendant's tax returns (let alone viewing 9 years of his returns) would actually yield the information that Plaintiff claims to seek – that is, whether or not Defendant (who denies receiving any money from Plaintiff) actually declared those sums (most of which is alleged to have been

delivered in cash in China) as income here in the United States. Therefore, because RFP No. 23 is so broad in its temporal scope, and because even with a narrowed temporal scope it appears to be of questionable (if any) relevance, Plaintiff's request to compel the production of Defendant's tax returns between 2011 and 2019 is **DENIED**.

Lastly, the court would like to remind Plaintiff that "[d]iscovery is supposed to proceed with *minimal* involvement of the Court." *See e.g.*, *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986) (emphasis added). The disputes that were brought before the court in this case were exceedingly meritless, constituting a waste of the court's time and judicial resources to such a degree that the court feels compelled to note that, "[i]t is regrettable that counsel for the parties and/or the parties themselves have so much difficulty cooperating with discovery [that] the Court is [needlessly] called upon to spell out detailed rights and responsibilities." *Id*. Going forward, the court expects significantly better cooperation between counsel and anticipates that nearly all, if not all, future disputes regarding the discovery in this case should be resolved by counsel without court involvement. It is axiomatic that counsel should seek judicial intervention in discovery disputes not as a first impulse (as appears to have been the case here) but only as a last resort after thoroughly discussing the dispute *in good faith*. *See Aevoe Corp. v. AE Tech Co.*, No. 2:12-cv-00053-GMN-NJK, 2013 U.S. Dist. LEXIS 124591, at *9 (D. Nev. Aug. 30, 2013).

**IT IS SO ORDERED.**

Dated: August 29, 2022.

ROBERT M. ILLMAN
United States Magistrate Judge